```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Kathleen Chambers

    v.                                              Civil No. 15-cv-150-JL
                                                      Opinion No. 2016 DNH 028

Carolyn Colvin, Acting Commissioner,
Social Security Administration

## ORDER ON APPEAL

Kathleen Chambers appeals the Social Security Administration's ("SSA") denial of her application for disability benefits. An Administrative Law Judge ("ALJ") found that Chambers suffered from diabetes, depression, anxiety, and left shoulder capsulitis. The ALJ nevertheless found that Chambers was not disabled within the meaning of the Social Security Act because she has sufficient residual functional capacity ("RFC") to work at jobs that exist in significant numbers in the national economy. See 42 U.S.C. § 423(d)(2)(A). The SSA Appeals Council subsequently denied Chambers's request for review of the ALJ's decision, rendering the ALJ's decision final. Chambers timely appealed to this court, pursuant to 42 U.S.C. § 405(g). In due course, Chambers moved to reverse the SSA's decision and the SSA's Acting Commissioner moved to affirm the denial of benefits.

Chambers asserts several arguments in support of her motion. First, she claims that the ALJ failed to give proper weight to

various medical opinions, including that of her long-time treating physician.  Next, she argues that the ALJ improperly disregarded a statement submitted by a former employer.  Chambers further argues that the ALJ erred in concluding that the severity of her symptoms was not fully substantiated.  In addition, Chambers asserts that the ALJ erred in constructing an RFC that was not supported by medical evidence.  Finally, Chambers claims that the ALJ improperly relied on an incomplete hypothetical posed to the vocational expert.

After review of the pending motions, the parties' joint statement of material facts and the administrative record, the court grants Chambers's motion, denies the Acting Commissioner's motion and remands the case to the SSA.

I.  **Standard of Review**

The court's review of the SSA's final decision "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The ALJ's decision will be upheld if it is supported by substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  This is less evidence than a preponderance but "more than a mere

scintilla." Id.; Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The possibility of drawing two inconsistent conclusions from the evidence does not preclude a finding of substantial evidence. Consolo, 383 U.S. at 620. Accordingly, the ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results are supportable. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2 (1st Cir. 1987).

## II.  **Background**[1]

In analyzing Chambers's benefit application, the ALJ invoked the required five-step process. See 20 C.F.R. § 416.920. First, he concluded that Chambers had not engaged in substantial work activity after the alleged onset of her disability on July 18, 2012. Next, the ALJ determined that Chambers suffered from several severe impairments: diabetes, depression, anxiety and adhesive capsulitis of the left shoulder. See 20 C.F.R. § 416.1920(c). At the third step, the ALJ concluded that Chambers's impairments – either individually or collectively – did not meet or "medically equal" one of the listed impairments in the Social Security regulations. See 20 C.F.R. §§ 416.920(d),

---

[1] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 11) is incorporated by reference. See L.R. 9.1(d).

416.925, & 416.926.  The ALJ next found that Chambers had the RFC to perform light, unskilled work, with the modification that she must avoid climbing ladders, ropes, and scaffolds; that she can only occasionally climb ramps and stairs, bend, stoop, balance, kneel, crouch, and crawl; that she can occasionally reach overhead with her upper left arm; that she should avoid exposure to vibrations; that she is limited to simple work and that she is able to maintain attention and concentration for two hour increments during an eight hour day.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

   After finding at step four that Chambers could not perform any past relevant work, the ALJ proceeded to step five, at which the SSA bears the burden of showing that a claimant can perform other work that exists in the national economy.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  Here, the ALJ, relying on Chambers's testimony and medical records, and the testimony of a vocational expert, concluded that Chambers could perform jobs which exist in the regional and national economy, such as cashier, fast food worker, and price marker.  As significant here, however, the vocational expert testified, in response to a hypothetical posed by the ALJ, that absence from work three or more times per month and a requirement of multiple 10-15 minute breaks would be limitations that would prohibit all

work.  Ultimately, the ALJ found Chambers not disabled within the meaning of the Social Security Act.

### III.  **Analysis**

A.  Weight given to treating physician's opinion

Chambers's treating endocrinologist, Dr. Beisswenger,[2] completed an RFC questionnaire.  He noted Chambers's diabetes diagnosis, as well as fatigue and hyper/hypoglycemic attacks.  He also observed that Chambers suffered from depression and anxiety, and that her symptoms would interfere with the attention and concentration necessary to perform simple work tasks "frequently," that is, roughly one-third to two-thirds of an eight-hour day.  Ultimately, Dr. Beisswenger concluded that Chambers should avoid concentrated exposures to environmental hazards, that her symptoms would produce "good days" and "bad days," and that she would likely to be absent from work more than four days per month as a result of her impairments and treatment.  Chambers argues that the ALJ should have given Dr. Beisswenger's opinion more weight.  The court agrees.

A treatment provider's opinions must be given controlling weight if the "treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is

---

[2] According to the record Dr. Beisswenger treated Chambers roughly twice a year for ten years.

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ." 20 C.F.R. § 404.1527(c)(2).  In a similar vein, the longer a treating source has treated a claimant and the more times the claimant has been seen by a treating source, the more weight we will be given to the source's medical opinion. Id. at § 404.1527(c)(2)(I).  Where a long-time treating physician has enough information to have obtained a longitudinal picture of the claimant's impairment, the source's opinion will be given more weight than if it were from a non-treating source. Id.  Finally, "[w]hen a treating physician's opinion is not entitled to controlling weight, the ALJ determines the amount of weight based on factors that include the nature and extent of the physician's relationship with the applicant, whether the physician provided evidence in support of the opinion, whether the opinion is consistent with the record as a whole, and whether the physician is a specialist in the field." Remick v. Astrue, 2011 DNH 176, 25 (citing 20 C.F.R. § 404.1527(d)(1-6)).  The ALJ must give reasons for the weight given to treating physician's opinions. Id.  (citing Soto-Cedeño v. Astrue, 380 Fed. App'x. 1, 4 (1st Cir. 2010)).

    Here, the ALJ gave Dr. Beisswenger's opinion only "little weight" because, according to the ALJ, his conclusion regarding

how much time Chambers would miss from work lacked support and was contradicted by the remainder of the evidence of record. After reviewing the record, the court finds that, in fact, it is the ALJ's conclusion that is unsupported by the record.

To start with, the court notes that the ALJ supported his conclusion in part by finding that Chambers's testimony was inconsistent with Beisswenger's findings. However, in so doing, it appears the ALJ did not consider the record as a whole. See Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In reducing the weight given to Dr. Beisswenger's opinion, the ALJ first noted that Chambers only had one diabetes-related emergency room visit, to which she "did not go willingly." From here, the ALJ stated that Chambers "indicated she prefers to manage her condition on her own, <u>which suggests that it is not severe enough to warrant medical attention.</u>" (Admin. R. at 19) (emphasis added). The record simply does not support this conclusion. In response to questioning by the ALJ, Chambers testified that there were indeed other instances of elevated blood sugar which might have necessitated emergency services that

7

she did not pursue.  (Id. at 36).  However, her decision not to go to the hospital did not involve any "preferences" or lack of medical need.  Instead, Chambers testified that either she was unable to drive herself – impliedly due to her condition –  or she couldn't afford the ambulance fee for each emergency setting.  (Id. at 36-7).  Moreover, she testified that the stress of the emergency room actually worsened her condition.  (Id. at 37).  This testimony cannot be squared with the ALJ's statement that Chambers's avoidance of the emergency room is an indication of the lack of severity of her condition.

 Another factor in the ALJ's consideration of Dr. Beisswenger's opinion revolved around Chambers declining to use an insulin pump, which, the record suggests, "might" have helped to better regulate her diabetes symptoms.  Once again, however, the ALJ relied upon a record fact to imply a "suggestion" that the record does not support.  Specifically, the ALJ found that Chambers "declined [to] consider the insulin pump, which suggests that her symptoms are controlled with needle therapy."  (Id. at 20) (emphasis added).  But the transcript paints a different picture.  Chambers testified that the possibility of mechanical failure of the pump caused her stress which would be counterproductive.  (Id. at 48-9).  There was nothing in her testimony to suggest that her decision to forego an insulin pump

was a reflection of how well her symptoms were controlled. The ALJ supported his inference with reference to Chambers's statement that her doctor told her that "if insulin or needle therapy was working for me, that would be fine." (Id. at 48). But given the laundry list of Chambers's diabetes-related problems filling the record, i.e., evidence that her therapy wasn't necessarily "working," the ALJ's conclusion improperly takes her statement out of context. See Mounce v. Astrue, 2011 DNH 181, 26 (finding error for ALJ to lift phrase "spectacularly well" from physician's notes without considering context of remarks).

Chambers next argues that the ALJ improperly ignored a letter from her previous employer that would have corroborated Dr. Beisswenger's opinion. In the letter, John Herrick, President of Excalibur Shelving Systems, reported that Chambers's diabetes symptoms caused her to work shorter days than normal at her box assembly job, as on "many . . . days she would become dizzy, weak, and unable to continue her day." (Admin. R. at 208). Ultimately, Herrick said in the letter, he had to terminate Chambers's employment because she could not be "consistent and reliable." (Id.). The government does not explicitly dispute that it was error to ignore Herrick's letter

entirely.[3]  Instead, it argues that the error was harmless because the ALJ concluded that the objective medical evidence contradicted Herrick's (and Chambers's and Dr. Beisswenger's) claim that Chambers could not maintain a schedule.  But where the ALJ explicitly concluded that "the record does not indicate the claimant would be unable to maintain a schedule or that her symptoms regularly interfere with her functioning to such an extent that she could not present for work on a regular basis" (AR-19), the court does not consider the error harmless.  See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (observing that ALJ's findings of fact "are not conclusive when derived by ignoring evidence . . . .").[4]

---

[3] Such an argument would have little likelihood of success. See Phelps v. Astrue, 2011 DNH 107, 21 (noting that an ALJ's failure to give reasons for disregarding the claimant's husband's testimony was error and proceeding to consider harmlessness).

[4] The ALJ also appears to have selectively ignored part of the opinion of a consultatitve examiner, clinical psychologist Edouard Carignan, who concluded that Chambers "cannot be relied upon to maintain attendance and a schedule."  (Admin. R. at 270). While the ALJ noted this finding, he rejected it because:  1) in his view, it was based on self-reporting and not clinical findings; 2) the report did not indicate any difficulty in concentration during the examination; and 3) Chambers showed up on time for the examination.  The first two conclusions are belied by the report, in which Dr. Carignan noted the clinical finding that Chambers scored lower than would be expected on one test, and became "confused" on another and needed prompting to get back on task.  (Id. at 268).  As to the ALJ's third point, it appears he extrapolated Chambers appearing as scheduled for her appointment with Dr. Carignan into a finding that the record failed to document "difficulty . . . presenting on time for scheduled appointments."  However, the scheduling issues are

Against this legal and factual backdrop, the court finds that the ALJ erred in giving Dr. Beisswenger's opinion only "little weight."

B.  RFC

Dr. Beisswenger did not provide any opinion with respect to the physical components of Chambers's RFC, such as lifting, sitting, standing and walking, instead suggesting that a physical therapist would be more appropriate to perform that analysis. The ALJ apparently based the physical component of his RFC finding on the report of the single decisionmaker (AR-17, 56-78).[5]  A single decisionmaker is an employee of the Social Security Administration who has no medical credentials.  See Stratton v. Astrue, 987 F. Supp. 2d 135, 138 n. 2 (D.N.H. 2012) (citing Goupil v. Barnhart, No. 03-34-P-H, 2003 WL 22466164, at *2 n. 2 (D. Me. Oct. 31, 2001)).  That opinion is entitled to no weight.  Id. at 150-51; see also Levesque v. Colvin 2014 DNH 191,

---

apparent from the Herrick letter, discussed supra, and Dr. Beisswenger's opinion.  The fact that Chambers showed up as scheduled for a single appointment is not "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).

[5] The ALJ did not specifically indicate the source of his physical RFC findings.  His findings, however, appear to be the same as those of the single decisionmaker.  Moreover, there are no other sources of a physical RFC in the record.

11

2.[6]  Here, by relying on the single decisionmaker, the ALJ "'effectively substituted his own judgment for medical opinion.'" Larocque v. Colvin, 2015 DNH 102, 15 (quoting Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007)).  This was error, for an ALJ "cannot assess the claimant's RFC himself. . . ." Levesque, at 2-3.

## IV.   Conclusion

For the foregoing reasons, the court finds that the ALJ improperly weighted the opinion of claimant's treating physician and improperly assessed her RFC.  Chambers's motion to reverse[7] is therefore GRANTED and the Commissioner's motion to affirm[8] is DENIED.  The case is remanded to the SSA for further consideration consistent with this Order.  The clerk shall enter judgment accordingly and close the case.

---

[6] In some cases of relatively little physical impairment an ALJ "permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." Levesque 2014 DNH 191, 3.  But that is not the case here (and the government does not argue otherwise).

[7] Doc. no. 7.

[8] Doc. no. 10.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: February 16, 2016

cc: Ruth Dorothea Heintz, Esq.
    Terry L. Ollila, AUSA